# EXHIBIT A

ANTHONY J. ORSHANSKY, Cal. Bar No. 199364
anthony@counselonegroup.com
ALEXANDRIA R. KACHADOORIAN, Cal. Bar No. 240601
alexandria@counselonegroup.com
JUSTIN KACHADOORIAN, Cal. Bar No. 260356
justin@counselonegroup.com
COUNSELONE, P.C.
9301 Wilshire Boulevard, Suite 650
Beverly Hills, California 90210
Telephone: (310) 277-9945
Facsimile:  (424) 277-3727

Electronically FILED by
Superior Court of California,
County of Los Angeles
2/04/2026 1:56 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By J. Nunez, Deputy Clerk

Attorneys for Plaintiffs DWAYNE BALLARD and TAMMY SMIRIN,
on behalf of themselves and others similarly situated

SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| DWAYNE BALLARD and TAMMY SMIRIN, on behalf of themselves and others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> ORGAIN, LLC, and DOES 1 to 10, inclusive, <br><br> Defendants. | Case No. **26STCV03757** <br><br> **CLASS ACTION COMPLAINT AND COMPLAINT FOR PUBLIC INJUNCTRIVE RELIEF FOR:** <br><br> (1) Violation of California Business & Professions Code section 17200, *et seq.* (Unfair Competition Law) <br><br> (2) Violation of California Business & Professions Code section 17500, *et seq.* (False Advertising Law) <br><br> (3) Violation of California's Consumers Legal Remedies Act, California Civil Code section 1750, *et seq.* <br><br> (4) Intentional Misrepresentation <br><br> (5) Negligent Misrepresentation <br><br> (6) Breach of Contract <br><br> (7) Breach of Implied Covenant of Good Faith and Fair Dealing <br><br> (8) Breach of Express Warranty <br><br> (9) Unjust Enrichment <br><br> **DEMAND FOR JURY TRIAL** |

CLASS ACTION COMPLAINT AND COMPLAINT FOR PUBLIC INJUNCTIVE RELIEF

Exhibit A

11

Plaintiffs Dwayne Ballard and Tammy Smirin (hereinafter, "Plaintiffs"), on behalf of themselves and all others similarly situated, complains of Defendant ORGAIN, LLC, ("Defendant") and DOES 1 through 10, as follows:

### NATURE OF ACTION

1. This class action arises from Defendant's mislabeling and false advertising of certain of its protein bars and powders, including but not limited to sea salt caramel, horchata, peanut butter, fruity cereal, strawberries & cream, cookies & cream, single serve plant-based protein powder in chocolate and vanilla bean, chocolate keto plant protein ketogenic powder; meal protein powder in creamy chocolate fudge and vanilla bean; plant plus collagen protein powder in vanilla bean and chocolate; creamy chocolate fudge and vanilla bean grass fed whey protein powders; protein & green plant based protein powder in vanilla bean, including peanut butter chocolate chunk, chocolate chip cookie dough, chocolate fudge, and peanut butter protein snack bars; and the 26g Organic Protein Grass Fed Protein Shake (the "Misbranded Products").[1]

2. Defendant labels the Misbranded Products with claims intended to appeal to health-conscious consumers. The labeling states that the products provide "clean nutrition," "better nutrition," "good health," "clean," "maximum nutrition," "good clean nutrition," and "higher standards." This misleading labeling is reinforced by non-label advertising, including on Defendant's website, where it sells the Misbranded Products directly to consumers with statements like, "delicious nutrition on the go," "clean nutrition," "when we say 'good'—we mean it in every sense of the word!", and "High Quality Ingredients."

3. Consumers purchasing the Misbranded Products—nutritional powders and bars—expressly do so because of the perceived health benefits from consuming these products, which Defendant reinforces through its product labeling and advertisements.

4. Contrary to this health-focused marketing, the Misbranded Products actually contain a potentially lethal sugar alcohol called erythritol, which has been found to significantly increase the likelihood of blood clots, stroke, and heart attack. The presence of erythritol makes the Misbranded Products far from healthy and contrary to the expectations of those consuming them.

---

[1] The Misbranded Products include any product sold by Defendant bearing the labeling or advertising representations described hereinbelow that contained erythritol.

1

CLASS ACTION COMPLAINT AND COMPLAINT FOR PUBLIC INJUNCTIVE RELIEF

5. Through the foregoing false and deceptive marketing, advertising, and labeling scheme, Defendant violated, and continues to violate, Business & Professions Code sections 17200, *et seq*., and 17500, *et seq*., and the Consumers Legal Remedies Act, California Civil Code sections 1750, *et seq*., and its conduct as alleged herein constitutes negligent or, alternatively, intentional misrepresentation, breach of contract, breach of the implied covenant of good faith and fair dealing, breach of express warranty, and unjust enrichment.

6. Plaintiffs, individually and on behalf of all others similarly situated, seek damages, restitution, and injunctive relief to remedy the harm suffered as a result of Defendant's unlawful labeling practices.

**PARTIES**

7. Throughout all relevant time periods, Plaintiffs were and are citizens of the State of California.

8. Throughout the relevant time period Defendant Orgain, LLC has manufactured and sold the Misbranded Products throughout California.

9. Plaintiffs are unaware of the true names and capacities of defendants sued herein as DOES 1 through 10, inclusive, and therefore sue those defendants by such fictitious names. Plaintiffs will amend this Complaint to allege their true names and capacities when ascertained. Plaintiffs are informed and believe and, on that ground, alleges that each of the fictitiously named defendants is responsible in some manner for the occurrences alleged and that Plaintiffs' injuries and damages, as alleged, are proximately caused by those occurrences.

10. Plaintiffs are informed and believe and on that ground allege that, at all relevant times, each defendant was the principal, agent, partner, joint venturer, officer, director, controlling shareholder, subsidiary, affiliate, parent corporation, successor in interest and/or predecessor in interest of some or all of the other defendants, and was engaged with some or all of the other defendants in a joint enterprise for profit, and bore such other relationships to some or all of the other defendants so as to be liable for their conduct with respect to the matters alleged below. Plaintiffs are informed and believe and on that ground allege that each defendant acted pursuant to and within the scope of the relationships alleged above, and that each knew or should have known

2

CLASS ACTION COMPLAINT AND COMPLAINT FOR PUBLIC INJUNCTIVE RELIEF

about and authorized, ratified, adopted, approved, controlled, aided, and abetted the conduct of all defendants.

11. Venue as to Defendant is proper in this judicial district pursuant to Code of Civil Procedure section 395.5 because the obligations giving rise to liability occurred in part in Los Angeles County, State of California.

**FACTUAL BACKGROUND**

12. Defendant manufactures and sells a range of health food products such as protein bars, protein powders, and nutritional powders throughout California, including the Misbranded Products.

13. Orgain heavily promotes its products as having extraordinary health benefits. It makes promises of "good, clean nutrition," "cleaner ingredients," "clean, green plant-based machine," "our commitment to clean nutrition," "convenient, nutritious, and downright delicious," "delicious nutrition on the go," and "Orgain's relentless pursuit of better nutrition." "Our mission to help people live vibrant lives through good, clean, nutrition."

14. Orgain strenuously creates the image of its brand and its products as healthy and good-for-you. "We are committed to incredibly high standards, only using higher quality ingredients to deliver clean and the most delicious nutrition possible. Most Orgain products are Certified Organic, gluten free, non-GMO and made without soy or artificial ingredients."[2]

15. Orgain strongly positions itself to appeal to health-conscious consumers. Indeed, it repeatedly and prominently represents that its products are "clean," nutritious, and free of unwholesome ingredients. "At Orgain, we believe that real nutrition has the power to make a real difference in people's lives. That's why we craft products made with thoughtfully selected high-quality ingredients that nourish the body[.]"[3] Orgain contends that its products "support a healthy, balanced lifestyle."[4]

16. Orgain makes sure that consumers believe they are purchasing a nutritious product and that they can trust the company to have consumers' best health interests in mind:

---

[2] *See* https://orgain.com/pages/our-story
[3] *See* https://orgain.com/
[4] *Ibid.*

3

CLASS ACTION COMPLAINT AND COMPLAINT FOR PUBLIC INJUNCTIVE RELIEF

Exhibit A
14

**Delicious Taste**
We're serious about good, clean nutrition, and when we say "good" – we mean
it in every sense of the word! It can't just be good for you; it's got to taste
GOOD too (great actually)! That's why we work relentlessly to craft the
smoothest, creamiest, and most delicious products possible. No grit - all taste,
because that's how we roll."[5]

**Clean Nutrition**
Your hardworking body deserves nothing short of the best! The crème de la
crème if you will. That's why Orgain products are Certified Organic whenever
possible, and made without soy ingredients, carrageenan, and GMOs. And we
never use any artificial flavors, colors, or preservatives. No fake stuff. Just
goodness."[6]

**High quality ingredients**
Everything we make at Orgain is crafted from high-quality ingredients, hand-
selected to maximize nutrition. What does that mean? It means we search high
and low, far and wide, to bring you the very best ingredients – be they non-
gmo, organic, gluten free, or otherwise. Each ingredient has to level up to our
high standards for nutrition, quality, and taste. Sip, slurp, and munch happy."[7]

**Relentlessly clean**
We are committed to incredibly high standards, only using higher quality
ingredients to deliver clean and the most delicious nutrition possible. Most
Orgain products are Certified Organic, gluten free, non-GMO and made
without soy or artificial ingredients.[8]

17. Orgain repeatedly and prominently positions itself as a healthy product, emphasizing
that its founder and CEO is a medical doctor and promoting its association with healthcare providers:

Our founder Andrew Abraham, M.D. created Orgain with one simple goal in
mind—to put the power of good, clean nutrition in the hands of people
everywhere.  After beating cancer at an early age, Andrew devoted himself to
medicine. But his passion to find better nutrition inspired him to leave his
practice to create foods and beverages based on the belief that **real nutrition
has the power to make a real difference in people's lives**.

Today, Andrew's **relentlessly high standards** for nutrition, quality, and taste
go into everything we create at Orgain.

That means we go the extra mile to hand-select Organic and high-quality
ingredients to maximize nutrition whenever we can. Our group of culinary
nutritionists make sure **everything is as delicious as it is clean**. And we
continue to create more accessible and inclusive options for everyone, including
products for adults and kids, that span dairy-based to plant-based, and more.

Simply put, at Orgain our mission is to help more people live vibrant lives through the
power of good, clean nutrition.[9]

---

[5] https://orgain.com/pages/our-story
[6] *Ibid.*
[7] *Ibid.*
[8] *Ibid.*
[9] *See* https://orgain.com/pages/our-story  (emphasis in original)

4

CLASS ACTION COMPLAINT AND COMPLAINT FOR PUBLIC INJUNCTIVE RELIEF

Exhibit A
15

18. Further, Orgain solicits healthcare professionals to be healthcare ambassadors to represent Orgain and has a portal just for them.[10] Orgain also has its own podcast called "The Good Clean Nutrition Podcast" in which a health professional and other health experts discuss nutrition, thus linking in consumers' minds that Orgain means good health and good nutrition. It implores consumers to "[s]tay in-the-know on the hottest trending topics in health and nutrition with The Good Clean Nutrition Podcast, sponsored by Orgain. Join host Ginger Hultin, MS, RDN, CSO, an integrative dietitian nutritionist, as she speaks with some of the most inspiring and passionate subject-matter experts in nutrition, health, and wellness."[11]

19. Despite Orgain's representations, many of its products are formulated with erythritol. Erythritol is a synthetic, artificial sweetener. Medical evidence has linked erythritol to adverse cardiovascular events. Erythritol increases blood platelet clotting and thereby increases the risk of heart attack and stroke. In fact, erythritol has a significantly worse effect on health than cigarette smoking. The evidence comes from the most well-respected institutions in medicine, including the National Institute of Health and the Cleveland Clinic.[12] The research became widely circulated and publicized in 2023. Many of Orgain's products were formulated containing erythritol as of 2023.

20. Orgain is aware of erythritol's hazards; indeed, it removed erythritol from its 50 superfood plant based protein powders and its plant-based protein powders. Yet in 2025, Orgain continues to use erythritol as a sweetener in many of its products, some which it was selling before 2023 and in new products that it has developed and began selling after 2023 and through the present.

21. Orgain currently manufactures and sells twenty-one products containing erythritol as a sweetener. The products include: thirteen plant-based protein powders, including sea salt caramel, horchata, peanut butter, fruity cereal, strawberries & cream, cookies & cream, single serve plant-based protein powder in chocolate and vanilla bean, chocolate keto plant protein ketogenic powder; meal protein powder in creamy chocolate fudge and vanilla bean; plant plus collagen protein powder in vanilla bean and chocolate; two whey protein powders including creamy chocolate fudge and

---

[10] *See* https://orgain.com/pages/orgain-healthcare
[11] *See* https://orgain.com/pages/the-good-clean-nutrition-podcast
[12] *See* https://www.nih.gov/news-events/nih-research-matters/erythritol-cardiovascular-events; https://pubmed.ncbi.nlm.nih.gov/36849732/; https://my.clevelandclinic.org/podcasts/health-essentials/nutrition-essentials-are-you-risking-your-health-using-artificial-sweeteners

CLASS ACTION COMPLAINT AND COMPLAINT FOR PUBLIC INJUNCTIVE RELIEF

Exhibit A

16

vanilla bean grass fed whey protein; protein & green plant based protein powder in vanilla bean; four protein bars including peanut butter chocolate chunk, chocolate chip cookie dough, chocolate fudge, and peanut butter; and the 26g Organic Protein Grass Fed Protein Shake.

22. Reasonable consumers including Plaintiffs purchased Orgain's products based on the false nutrition and health benefit claims and trusting Orgain to safeguard their health and wellness. Yet what consumers received was a product that threatened their health by putting them at increased risk of heart attacks and strokes.

23. In this way, Defendant's conduct violates California's Consumers Legal Remedies Act (CLRA), Cal. Civ. Code § 1770(a)(5) ("Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have."), (7) ("Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another"), and (9) ("Advertising goods or services with intent not to sell them as advertised").

24. Despite the endorsement by health professionals, Defendant's including of erythritol harms the United States healthcare system by threatening to flood it with a wave of cardiovascular incidents caused by its protein products.

25. As a company aggressively branding itself as a health, nutrition, and wellness food leader, founded and run by a health-conscious medical doctor, and affiliated with numerous health care professionals, Defendant was in a position to know the danger of erythritol and the risk it poses to consumers. Plaintiffs, who lack training or education in health, nutrition, or medicine or medical science, were at a significant disadvantage to Defendant in evaluating the Misbranded Products.

26. Plaintiffs purchased the Misbranded Products in California during the last four years. Relying on Defendant's advertising, marketing, and promotions, Plaintiffs purchased the Misbranded Products believing that they were healthy and nourishing and would help elevate Plaintiffs' health and wellness. If Plaintiffs had known the true harm posed by the ingredients of the Misbranded Products, Plaintiffs would not have purchased these items.

27. Plaintiffs were misled by Defendant's labeling to purchase the Mislabeled Products

CLASS ACTION COMPLAINT AND COMPLAINT FOR PUBLIC INJUNCTIVE RELIEF

Exhibit A

17

and, as a result, have suffered actual injury in that they have been induced to buy products that they would not have bought or would not have bought at the same price but for Defendant's misrepresentations.

## CLASS ALLEGATIONS

28. Plaintiffs bring this action as a class action pursuant to California Code of Civil Procedure section 382 on behalf of the following class:

> All persons who purchased one or more of the Misbranded Products in California and made his or her purchase at any time within the longest applicable limitations period.

29. Members of the class, as described above, will be referred to as "class members." Excluded from the class are (1) Defendant, any entity or division in which Defendant has a controlling interest, and their legal representatives, officers, directors, assigns, and successors, (2) the judge to whom this case is assigned and the judge's staff and members of their immediate families, and (3) Plaintiffs' counsel, its staff, and members of their immediate families.  Plaintiffs reserve the right to amend the above class and to add subclasses as appropriate based on investigation, discovery, and the specific theories of liability.

30. This action has been brought and may properly be maintained as a class action under California Code of Civil Procedure section 382 because there is a well-defined community of interest in the litigation and the class is easily ascertainable.

### A.    Numerosity

31. Although the precise number of class members has not been determined at this time, Plaintiffs are informed and believe that the class members are so numerous that joinder is impracticable and that the disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

### B.    Common Questions Predominate

32. There are questions of law and fact common to the class that predominate over any questions affecting only individual putative class members.  Thus, proof of a common set of facts will establish the right of each class member to recovery.  These common questions of law and fact include but are not limited to:

7

CLASS ACTION COMPLAINT AND COMPLAINT FOR PUBLIC INJUNCTIVE RELIEF

Exhibit A

18

a.   Whether Defendant violated section 1770(a)(5) of the CLRA by representing that the Misbranded Products have characteristics, ingredients, uses, benefits, or quantities that they do not have;

b.   Whether Defendant violated section 1770(a)(7) of the CLRA by representing that the Misbranded Products are of a particular standard, quality, or grade, or that goods are of a particular style or model when they are of another;

c.   Whether Defendant violated section 1770(a)(9) of the CLRA by advertising the Misbranded Products with intent not to sell them as advertised;

d.   Whether Defendant violated the UCL by falsely representing the health benefits of the Misbranded Products;

e.   Whether Defendant violated the FAL by falsely advertising the Misbranded Products to mispresent the health benefits of the Misbranded Products;

f.   Whether Defendant intentionally or, alternatively, negligently represented the health benefits of the Misbranded Products;

g.   Whether Defendant breached its contracts with consumers;

h.   Whether Defendant breach its express warranties made to consumers; and

i.   Whether Defendant's conduct constitutes unjust enrichment.

**C.    Typicality**

33. Plaintiffs' claims are typical of the claims of the putative class members because Plaintiffs purchased the Misbranded Products throughout the class period based on Defendant's labeling representations, as alleged above.  In this way, Plaintiffs and each class member sustained similar injuries arising out of Defendant's conduct in violation of law.  The injuries of each class member were caused directly by Defendant's wrongful conduct.  In addition, the factual underpinning of Defendant's misconduct is common to all putative class members and represents a common thread of misconduct resulting in injury to all class members.  Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the class members and are based on the same legal theories.

///

8

CLASS ACTION COMPLAINT AND COMPLAINT FOR PUBLIC INJUNCTIVE RELIEF

### D.    Adequacy

34. Plaintiffs will fairly and adequately represent and protect the interests of the class. Counsel who represents Plaintiffs and putative class members are experienced and competent in litigating class actions.

### E.    Superiority of Class Action

35. A class action is superior to other available means for the fair and efficient adjudication of this controversy.  Individual joinder of putative class members is not practicable, and questions of law and fact common to putative class members predominate over any questions affecting only individual putative class members.  Each putative class member has been damaged and is entitled to recovery as a result of the violations alleged herein.  Moreover, because the damages suffered by individual members of the class may be relatively small, the expense and burden of individual litigation would make it difficult or impossible for individual members of the class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action.  Class action treatment will allow those persons similarly situated to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system.  Plaintiffs are unaware of any difficulties in managing this case that should preclude class action.

**FIRST CAUSE OF ACTION**

**VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW,**

**BUS. & PROF. CODE § 17200, *et seq.* (THE "UCL")**

36. Plaintiffs hereby incorporate by reference the allegations contained in this Complaint.

37. California's Unfair Competition Law ("UCL"), California Business & Professions Code sections 17200 *et seq.*, protects both consumers and competitors by promoting fair competition in commercial markets for goods and services.  The UCL prohibits any unlawful, unfair or fraudulent business act or practice.  A business practice need only meet one of the three criteria to be considered unfair competition.

38. The UCL defines unfair business competition to include any "unlawful, unfair or

9

CLASS ACTION COMPLAINT AND COMPLAINT FOR PUBLIC INJUNCTIVE RELIEF

fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal Bus. & Prof. Code § 17200.

39. A business act or practice is "unfair" under the Unfair Competition Law if the reasons, justifications, and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims.

40. Defendant violates the unfair prong of the UCL by falsely representing the Misbranded Products as alleged above.

41. These acts and practices are unfair because they are likely to cause consumers to falsely believe that the Misbranded Products are healthy when they are in fact harmful to their health. Instead of ingesting a protein powder, shake, or bar that is nutritious and contains only "clean," natural, and safe ingredients that support their wellness, consumers are poisoning themselves with a sugar alcohol that is more dangerous to them and risks more severe health consequences than smoking cigarettes.

42. The gravity of the harm to members of the putative class resulting from these unfair acts and practices outweighs any conceivable reasons, justifications, and/or motives of Defendant in such deceptive acts and practices. Through its unfair acts and practices, Defendant improperly obtained, and continues to obtain, money from Plaintiffs and the putative class while failing to provide the promised product. Plaintiffs request that Defendant restore this money to Plaintiffs and all class members and cease violating the UCL. Without such relief, Plaintiffs and the putative class will be irreparably harmed.

43. A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming public.

44. Defendant's conduct is "fraudulent" within the meaning of the UCL because it has deceived Plaintiffs and the general public into believing that they are purchasing healthy, nutritious, safe foods, when in fact they are ingesting a poison that catastrophically endangers their health, as alleged above.

45. In deciding to purchase the Misbranded Products, Plaintiffs relied on Defendant's misleading and deceptive representations.

CLASS ACTION COMPLAINT AND COMPLAINT FOR PUBLIC INJUNCTIVE RELIEF

46. An unlawful business practice is anything that can properly be called a business practice and that at the same time is forbidden by law. A business act or practice is "unlawful" under the UCL if it violates any other law.

47. Defendant violates the unlawful prong of the UCL by violating the CLRA, Cal. Civ. Code § 1770(a)(5), (7), and (9) and the FAL, Cal. Bus. & Prof. Code § 17500, *et seq.*, as alleged hereinbelow.

48. As a result of the foregoing conduct, Defendant has been, and will continue to be, unjustly enriched at the expense of Plaintiffs and the putative class. Defendant has been unjustly enriched by obtaining revenues and profits that it would not otherwise have obtained absent its false, misleading, and deceptive conduct.

49. Through its unfair, fraudulent, and unlawful acts and practices, Defendant has improperly obtained money from Plaintiffs and the putative class. Pursuant to California Business & Professions Code § 17203, Plaintiffs seek equitable relief, including money unlawfully obtained from Plaintiffs and the putative class and an order enjoining Defendant from continuing to engage in the unfair and unlawful conduct described above.

**SECOND CAUSE OF ACTION**

**VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW,**

**BUS. & PROF. CODE § 17500, *et seq.* (THE "FAL")**

50. Plaintiffs hereby incorporate by reference the allegations contained in this Complaint.

51. The California False Advertising Law prohibits unfair, deceptive, untrue, or misleading advertising including, but not limited to false statements as to the quality or contents of products sold to consumers.

52. As alleged above, Defendant's postures the Misbranded Products to induce consumers to believe they are doing something good for their health. But instead of ingesting a protein powder, shake, or bar that is nutritious and contains only "clean," natural, and safe ingredients that support their wellness, consumers are poisoning themselves with a sugar alcohol

11

CLASS ACTION COMPLAINT AND COMPLAINT FOR PUBLIC INJUNCTIVE RELIEF

that is more dangerous to them and risks more severe health consequences than smoking cigarettes.[13]

53. Defendant's practice is unfair, deceptive, and misleading to consumers, who think they are getting a different product from what they actually receive.

54. Through its unfair, deceptive, and misleading acts and practices, Defendant has improperly obtained money from Plaintiffs and the putative class. Plaintiffs respectfully request that the Court restore these funds to Plaintiffs and the putative class and enjoin Defendant's continuing violations of the FAL to prevent further irreparable harm to consumers.

**THIRD CAUSE OF ACTION**

**VIOLATION OF CALIFORNIA'S CONSUMERS LEGAL REMEDIES ACT,**

**CAL. CIVIL CODE SECTION 1750, *et seq.* (THE "CLRA")**

55. Plaintiffs hereby incorporate by reference the allegations contained in this Complaint.

56. This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code sections 1750, *et seq.* (the "CLRA").

57. Plaintiffs and each member of the putative class are "consumers" within the meaning of Civil Code section 1761(d).

58. Defendant's sale of the Misbranded Products constitutes "transactions" within the meaning of Civil Code section 1761(e).

59. The Misbranded Products purchased by Plaintiffs and the putative class are "goods" within the meaning of Civil Code section 1761(a).

60. Defendant has engaged in unfair methods of competition and unfair and/or deceptive acts or practices against Plaintiffs and the putative class in violation of the CLRA by falsely representing the Misbranded Products as alleged above.

61. Defendant's misrepresentations violate Civil Code sections 1770(a)(5)

---

[13] *See* https://my.clevelandclinic.org/podcasts/health-essentials/nutrition-essentials-are-you-risking-your-health-using-artificial-sweeteners ("Something like smoking increases risk, but it's actually to a lesser extent, believe it or not. So that would be, typically, smoking would be a 25% increase in risk, not a doubling of the risk, which would be like a 200% risk. So what we found for erythritol, for example, is subjects whose levels were in the top quartile, meaning the top 25% of the population, they were at twice the risk for a heart attack, stroke or death in the ensuing follow-up period, which was three years compared to subjects whose level was in the bottom quartile.").

CLASS ACTION COMPLAINT AND COMPLAINT FOR PUBLIC INJUNCTIVE RELIEF

Exhibit A

23

("[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have"), 1770(a)(7) (prohibiting "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another"), and 1770(a)(9) (prohibiting "[a]dvertising goods or services with intent not to sell them as advertised").

62. As a result of these acts and practices, Plaintiffs and the putative class were damaged in that Defendant's unlawful and misleading acts and practices impacted the decisions of Plaintiffs and the putative class to purchase Defendant's products.  In the absence of Defendant's false and misleading representations in its marketing, advertising, and labeling, Plaintiffs and the putative class would not have bought the Misbranded Products from Defendant.

63. Pursuant to California Civil Code section 1780(a)(2), Plaintiffs, on behalf of themselves and the putative class, requests that this Court issue an injunction prohibiting Defendant from engaging in the unlawful and deceptive methods, acts, and practices alleged above.

64. Pursuant to Civil Code section 1782, on January 28, 2026, Plaintiffs sent Defendant a letter, by certified mail, in which they outlined the foregoing violations of the CLRA and requested that Defendant remedy these violations as to themselves and the class.  If Defendant has not agreed to correct, repair, replace, or otherwise rectify the violations alleged herein within thirty (30) calendar days after Defendant's receipt of Plaintiffs' letter, then Plaintiffs will, pursuant to Civil Code section 1782(d), seek damages, including actual, statutory, and punitive damages.

## FOURTH CAUSE OF ACTION

### INTENTIONAL MISREPRESENTATION

65. Plaintiffs hereby incorporate by reference the allegations contained in this Complaint.

66. Defendant has intentionally made material misrepresentations of fact concerning the Misbranded Products. In particular, Defendant represented that the protein bars, powders, and shakes were nutritious, beneficial to the health in those who consumed them, and were free of harmful ingredients.

13

CLASS ACTION COMPLAINT AND COMPLAINT FOR PUBLIC INJUNCTIVE RELIEF

67. Defendant knew that the intentional misrepresentations alleged herein were false at the time Defendant made them.

68. Defendant intended that Plaintiffs and members of the putative class should rely on the false representations and purchase Defendant's items.

69. Defendant's false representations regarding the composition of its food products is objectively material to reasonable consumers, and therefore reliance upon such representations may be presumed as a matter of law.

70. Plaintiffs and members of the putative class reasonably relied to their detriment on Defendant's intentional misrepresentations.

71. Defendant's intentional misrepresentations were a substantial factor in causing Plaintiffs and members of the putative class to purchase items from Defendant and to suffer damages.

72. Defendant has acted with malice by engaging in conduct that was and is intended by Defendant to cause injury to the Plaintiffs and the members of the putative class.

73. Defendant has committed fraud through its intentional misrepresentations, deceit, and/or concealment of material facts known to Defendant with the intent to cause injury to the purchasers of its items.

74. As a proximate result of Defendant's intentional misrepresentations, Plaintiffs and members of the putative class suffered an ascertainable loss and are entitled to relief and compensatory and punitive damages, in an amount to be determined at trial.

**FIFTH CAUSE OF ACTION**

**NEGLIGENT MISREPRESENTATION**

75. Plaintiffs hereby incorporate by reference the allegations contained in this Complaint.  Plaintiffs plead this cause of action in the alternative to the foregoing cause of action.

76. Defendant has made material misrepresentations of fact concerning the Misbranded Products.  In particular, Defendant represented that its products were health-promoting, nutritious, safe and "clean" with only wholesome and beneficial ingredients in its marketing and advertising.

77. Defendant had no reasonable grounds for believing that its misrepresentations were

14

CLASS ACTION COMPLAINT AND COMPLAINT FOR PUBLIC INJUNCTIVE RELIEF

true.

78. Defendant either knew or should have known that Plaintiffs and members of the putative class would rely on the false representations and purchase the Misbranded Products.

79. Defendant's false representations regarding the Misbranded Products were objectively material to reasonable consumers, and therefore reliance upon such representations may be presumed as a matter of law.

80. Plaintiffs and members of the putative class reasonably relied to their detriment on Defendant's false representations, which caused them to purchase items from Defendant.

81. As a proximate result of Defendant's negligent misrepresentations, Plaintiffs and members of the putative class have been damaged.

**SIXTH CAUSE OF ACTION**

**BREACH OF WRITTEN CONTRACT**

82. Plaintiffs hereby incorporate by reference the allegations contained in this Complaint.

83. Plaintiffs and each member of the putative class alleged herein entered into contracts with Defendant wherein Defendant promised to provide a healthy, nutritious, safe product with only clean ingredients and free from harmful ingredient.

84. Defendant breached these contracts because Defendant formulated its product with erythritol, a sugar alcohol that has been linked to a very significant increase in the risk of heart attack or stroke as a result of its ingestion.

85. As a direct and proximate result of Defendant's breach, Plaintiffs and each member of the putative class suffered damages, in an amount in excess of the jurisdictional limits of this Court to be proven at the time of trial.

**SEVENTH CAUSE OF ACTION**

**BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

86. Plaintiffs hereby incorporate by reference the allegations contained in this Complaint.

87. Plaintiffs and putative class members entered into contracts with Defendant, as

15

CLASS ACTION COMPLAINT AND COMPLAINT FOR PUBLIC INJUNCTIVE RELIEF

alleged hereinabove.  Implied in these contracts was a covenant of good faith and fair dealing by each party agreeing not to do anything that would deprive the other parties of the benefits of the contracts.

88. Plaintiffs and putative class members have performed all conditions, covenants, and promises required of them under the contracts.

89. Defendant breached the implied covenant of good faith and fair dealing by failing to provide the purchased products as promised to Plaintiffs and putative class members, and in doing so did not act fairly and in good faith.

90. As a direct and proximate cause of Defendant's breach of the implied covenant of good faith and fair dealing, Plaintiffs and putative class members have been damaged, as alleged above, in an amount in excess of the jurisdictional limits of this Court to be proven at the time of trial.

## EIGHTH CAUSE OF ACTION

### BREACH OF EXPRESS WARRANTY

91. Plaintiffs hereby incorporate by reference the allegations contained in this Complaint.

92. By advertising and selling the Misbranded Products at issue, Defendant made promises and affirmations of fact in advertising and marketing the products, as described herein. This marketing and advertising constitute express warranties and became part of the basis of the bargain between Plaintiffs and members of the class, and Defendant.

93. Defendant, through its advertising and  marketing, created express warranties that the Misbranded Products comport with the representations identified hereinabove. Specifically, Defendants created express warranties that the Misbranded Products are health-promoting, nutritious, and safe, with "clean" ingredients and nothing harmful.

94. The express warranties appeared on Defendant's website and on the labels for the Misbranded Product specifically relate to the goods being sold.

95. Despite Defendant's express warranties about the nature of the Misbranded Products, the Misbranded Products did not comply with the foregoing representations. Thus, the Misbranded

16

CLASS ACTION COMPLAINT AND COMPLAINT FOR PUBLIC INJUNCTIVE RELIEF

Exhibit A

27

Products were not what Defendant represented them to be.

96. Accordingly, Defendant breached express warranties about the Misbranded Products because the Misbranded Products did not conform to Defendant's affirmations and promises.

97. Plaintiffs provided Defendant with pre-suit notice of the breach of warranty, including by letter dated January 28, 2026.

98. As a direct and proximate result of Defendant's breach of express warranty, Plaintiffs and members of the class were harmed in the amount of the purchase price they paid for the Misbranded Products. Further, Plaintiffs and members of the proposed class have suffered and continue to suffer economic losses and other general and specific damages including, but not limited to, the amounts paid for the Misbranded Products, and any interest that would have accrued on those monies, in an amount to be proven at trial.

## NINTH CAUSE OF ACTION

### UNJUST ENRICHMENT

*(Asserted on behalf of the Nationwide Class)*

99. Plaintiffs hereby incorporate by reference the allegations contained in this Complaint.

100. An individual is required to make restitution if he or she is unjustly enriched at the expense of another.

101. A person is enriched if the person receives a benefit at another's expense.

102. The person receiving the benefit is required to make restitution where the circumstances are such that, as between the two individuals, it is unjust for the person to retain it.

103. Defendant's conduct in enticing Plaintiffs and putative class members to purchase the Misbranded Products through its false and misleading advertising and packaging as described throughout this Complaint is unlawful because the statements contained on Defendant's product labels are untrue, deceptive, or misleading.

104. Defendant took monies from Plaintiffs and members of the putative class based on false representations about the Misbranded Products, as alleged hereinabove.

105. Defendant has been unjustly enriched at the expense of Plaintiffs and the putative

17

CLASS ACTION COMPLAINT AND COMPLAINT FOR PUBLIC INJUNCTIVE RELIEF

class as result of Defendant's unlawful conduct alleged herein, thereby creating a quasi-contractual obligation on Defendant to restore these ill-gotten gains to Plaintiffs and putative class members.

106. Defendant received a benefit, i.e., revenue and profits from the sale of the Misbranded Products, at the expense of Plaintiffs and the class because Defendant procured the sale of such products using false, deceptive, or misleading representations, as alleged hereinabove.

107. It is unjust for Defendant to retain the money it received from Plaintiffs and putative class members because Defendant gained that money by deceiving Plaintiffs and the class into believing they would receive a different, and safer, product from the one they actually received.

108. Plaintiffs and the class are therefore entitled to restitution of the funds they paid to Defendant for their purchases, which Defendant has unjustly retained.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and on behalf of the other members of the putative class, pray as follows:

A. For an order certifying that this action is properly brought and may be maintained as a class action, that Plaintiffs be appointed the class representatives, and that Plaintiffs' counsel be appointed counsel for the class;

B. For a declaration that Defendant's practices violate the UCL, FAL, and CLRA; constitute intentional or, in the alternative, negligent misrepresentation; constitute breach of contract, breach of the implied covenant of good faith and fair dealing, and breach of express warranty; and constitute unjust enrichment;

C. For an award of actual and compensatory damages according to proof against Defendant;

D. For an award of appropriate equitable relief, including but not limited to an injunction and public injunction forbidding Defendant from engaging in the conduct described in this Complaint, and restitution;

E. For an award of punitive damages;

18

CLASS ACTION COMPLAINT AND COMPLAINT FOR PUBLIC INJUNCTIVE RELIEF

Exhibit A

29

F.      For an order awarding reasonable attorneys' fees and the costs of suit herein, including an award of attorneys' fees and costs pursuant to California Code of Civil Procedure section 1021.5 and California Civil Code section 1780(e);

G.      For an award of pre- and post-judgment interest; and

H.      For such other and further relief as may be deemed necessary or appropriate.

## JURY DEMAND

Plaintiffs hereby demand a jury trial on all issues so triable.

DATED:      January 26, 2026              COUNSELONE, PC

By _____
Anthony J. Orshansky
Alexandria R. Kachadoorian
Justin Kachadoorian

*Attorneys for Plaintiffs Dwayne Ballard and Tammy Smirin and the Putative Class*

19

CLASS ACTION COMPLAINT AND COMPLAINT FOR PUBLIC INJUNCTIVE RELIEF

## DECLARATION OF PLAINTIFF DWAYNE BALLARD
### PURSUANT TO CAL. CIVIL CODE § 1780(d)

I, Dwayne Ballard, declare:

1. I am over 18 years of age and the named plaintiff in this action. I have personal knowledge of the facts herein, and if called upon to testify to the information contained in this Declaration, I could and would competently do so.

2. The transactions that are the subject of this lawsuit occurred in part in Los Angeles County, State of California.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on _____1/27/2026_____.

By: _____
Dwayne Ballard

20

CLASS ACTION COMPLAINT AND COMPLAINT FOR PUBLIC INJUNCTIVE RELIEF

Exhibit A

31